MICHAEL ARATA, ESQ.
Nevada Bar No. 11902
E-mail: marata@hkm.com
HKM EMPLOYMENT ATTORNEYS LLP
101 Convention Center Drive, Suite 600
Las Vegas, Nevada 89109
Tel: (702) 805-8340
Fax: (702) 805-8340
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| JOHN MESSERSCHMITT, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTRESS FIRM, INC.; a Foreign Corporation, and DOES 1-50, inclusive; and ROE CORPORATIONS 1-50, inclusive,<br><br>Defendant. | CASE NO.:<br><br>COMPLAINT<br><br>[JURY TRIAL DEMANDED] |

Plaintiff John Messerschmitt ("Plaintiff") by and through his attorneys of record, the law firm of HKM Employment Attorneys LLP, complains and alleges as follows:

## JURISDICTION

1. This is an action for damages brought by Plaintiff for unlawful workplace retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; for violation of Nevada Revised Statute § 613.310 *et seq.*; and for certain claims brought pursuant to the Nevada law as outlined below.

2. This Court has primary jurisdiction over claims set forth herein pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(4) (civil rights action) and 42 U.S.C. § 2000e-5(f)(3) (unlawful discrimination and retaliation in employment). Additionally, this Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. § 1367.

3. All or most of the material allegations contained in this Complaint are believed

to have occurred in Washoe County, Nevada. Therefore, venue properly lies in the northern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDY

4. In May 2022, Plaintiff initiated the process of filing his charge of retaliation against his employer, the Defendant named in this action, with the Equal Employment Opportunity Commission ("EEOC") wherein he alleged retaliation.

5. On or about August 31, 2022, Plaintiff filed a Charge of Discrimination against his employer, the Defendant named in this action, with the EEOC wherein he alleged retaliation.

6. On or about January 31, 2024, Plaintiff received his Notice of Right to Sue from the EEOC.

7. This action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

8. Plaintiff has exhausted his administrative remedy on all claims pled hereunder prior to filing this action with this Court.

## GENERAL ALLEGATIONS

9. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

10. Plaintiff is a current resident of Washoe County, Nevada, and has been at all times relevant herein.

11. Defendant Mattress Firm, Inc. ("Defendant" or "Mattress Firm" or the "Company") is a foreign corporation, headquartered in Texas and incorporated in Delaware, which is authorized to, and does conduct, business in the state of Nevada.

12. At all times relevant to this matter, Defendant is an "employer" subject to the provisions of Title VII, and the provisions of Nevada Revised Statute § 613.310 *et seq.*

13. Plaintiff is informed and believes and thereon alleges that at all times relevant herein, each of the Defendant Does 1-10 and Roe Corporations 1-50 were responsible in some manner for the occurrences and injuries alleged in this complaint. Their names and capacities

are currently unknown to Plaintiff. Plaintiff will amend this Complaint to show such true names and capacities when the same have been ascertained.

14. Defendant is liable for the acts of their agents and employees as set forth below.

15. At all times relevant to this matter, Defendant had over 500 employees, and is therefore subject to the provisions of Title VII and Nevada Revised Statute § 613.310 *et seq*.

16. On or about February 2, 2001, Plaintiff, at age 18, began working for Defendant.

17. Plaintiff was initially hired as a Sales Associate.

18. Over the next twenty years, Plaintiff continuously worked for the Defendant and was ultimately promoted to Senior Store Manager over the Harvard and Legends locations, located in Reno, Nevada, and Sparks, Nevada, respectively, in or around summer 2020.

19. As Senior Store Manager, Plaintiff reported directly to District Manager Steve Rader.

20. District Manager Steve Rader in turn reported to Regional Vice President Rachel Joslyn.

21. Beginning in approximately 2019, Plaintiff and other store employees and managers observed unprofessional behavior by District Manager Rader on store premises and at store events.

22. This behavior included but was not limited to District Manager Rader:

   a. Driving to an employee's home and interrupting them in the middle of the night without invitation and while he appeared to be under the influence;

   b. Becoming inebriated during a company holiday party to the extent he was instructed to leave by the hosting restaurant;

   c. Engaging in bullying Company employees;

   d. Appearing intoxicated at work; and

   e. Requesting store employees to leave the store and run his personal errands.

23. This conduct was reported by Plaintiff and other store managers to Regional Vice President Joslyn and Mattress Firm's Human Resources department on multiple occasions

in the proceeding years; however, no action was taken in response to the complaints.

24. In or around 2020, Plaintiff observed District Manager Rader engaging in discriminatory interview practices while interviewing and evaluating applicants for Company sales and/ other store positions.

25. Plaintiff observed District Manager Rader failing to use the Company's predetermined interview questions and would often choose to "wing it" instead.

26. Plaintiff observed District Manager Rader ask non-white applicants different, and more difficult, questions than white applicants.

27. Plaintiff observed District Manager Rader ask non-white applicants to engage in sales roleplays while he did not make the same request of white applicants.

28. Plaintiff witnessed District Manager Rader making racist or racially insensitive comments at work and/or in the presence of other Mattress Firm employees.

29. These comments included, but were not limited to, "This Black Lives Matter bullshit has to stop," coaching an associate on how to "properly" deal with Asian customers, asking whether a Black applicant's tattoos were obtained in jail, and discussing split sales by referring to another Black employee and how their culture expects to "eat the whole kill."

30. Plaintiff discussed District Manager Rader's interview and hiring practices with other store managers in District Manager Rader's assigned district, *i.e.*, Eastern Sacramento/Northern Nevada.

31. Other store managers corroborated Plaintiff's observations and confirmed they witnessed District Manager Rader engaging in similar practices.

32. In June 2021, Plaintiff and other store managers in District Manager Rader's district met with him to discuss his interview practices, including how he (1) failed to use the Company's approved interview questions, and (2) asked applicants of different socioeconomic backgrounds additional and/or more difficult questions. District Manager Rader's conduct, however, did not change following the meeting.

33. In or around August 2021, Plaintiff approached Regional Vice President Joslyn

about District Manager Rader's inappropriate conduct, including his racist and racially insensitive comments and discriminatory hiring and interview practices.

34. In response, Regional Vice President Joslyn instructed Plaintiff to reach out to select store managers who observed District Manager Rader's improper conduct and have them submit an email detailing what they observed.

35. Plaintiff never received any further feedback or response from Regional Vice President Joslyn.

36. Upon information and belief, District Manager Rader did not change his interview or hiring practices and continued to ask non-white applicants additional and/or more difficult interview questions, in addition to asking them to engage in sales roleplays that he did not ask of white applicants.

37. On or about February 22, 2022, Plaintiff confronted District Manager Rader about his continued improper treatment of store employees and his discriminatory interview and hiring practices.

38. On or around February 23, 2022, Plaintiff emailed District Manager Rader and Regional Vice President Joslyn detailing District Manager Rader's misconduct. In addition to raising various managerial issues, Plaintiff alleged the following:

    a. That District Manager Rader is continuing to fail to ask the same or similar interview questions with every applicant;

    b. That by District Manager Rader's asking different questions of applicants from "varying socioeconomic backgrounds," Mattress Firm is no longer conducting an EEOC-complaint interview; and

    c. That managers have witnessed District Manager Rader ask "an African American Applicant to conduct a sales roll play and answer more questions than other applicants that day. This is wrong, illegal and directly goes against our DEI initiatives, let alone our personal values."

39. Plaintiff's February 23, 2022, email was the first time he expressly reported

District Manager Rader's discriminatory hiring practices in writing to Regional Vice President Joslyn along with his beliefs that District Manager Rader had violated Mattress Firm's Diversity, Equity and Inclusion ("DEI") policies and EEOC guidelines.

40. Shortly thereafter, in early March 2022, District Manager Rader held an unscheduled conference call during which he announced he was leaving the Company, and that Regional Vice President Joslyn was being reassigned to another region.

41. On or around April 4, 2022, new District Manager Rennie Tomimbang requested that Plaintiff join in a conference call. During the call, Regional Vice President Joslyn announced that Plaintiff was being demoted for "unprofessional communication, challenging leadership, and code of conduct violations."

42. Plaintiff had not received any written warnings or progressive discipline in the 20 years he was employed by Mattress Firm for any violations involving unprofessional communication, challenging leadership, or code of conduct violations.

43. Neither Regional Vice President Joslyn, District Manager Rader, nor any Mattress Firm leadership or management ever raised or discussed any allegations with Plaintiff that he engaged in "unprofessional communication, code of conduct violations, and challenging leadership" prior to his demotion.

44. When Plaintiff requested the reasons for his demotion in writing, Regional Vice President Joslyn responded, "No, we're doing this verbally."

45. When Plaintiff requested information or an explanation about the specific instances of "unprofessional communication, code of conduct violations, and challenging leadership" he was accused of, a Mattress Firm Human Resources associate told Plaintiff that she did not have that information as it was not documented in Plaintiff's personnel file.

46. Plaintiff was demoted all the way from Senior Store Manager, the highest managerial position at the store level, down to entry-level Sales Associate, the lowest sales position at the store level.

47. Plaintiff contested the demotion as unfair and retaliatory for his reporting

1  District Manager Rader engaging in discriminatory hiring and interview practices in addition
2  to other misconduct.

3     48.    In or around late April 2022, Plaintiff was informed that Mattress Firm denied
4  his appeal.

5     49.    Plaintiff's demotion from Senior Store Manager to Sales Associate significantly
6  reduced his compensation and benefits in addition to loss of prestige, and prospective future
7  advancement with Mattress Firm.

8     50.    As a result of the demotion, Plaintiff's compensation and benefits were
9  significantly reduced.

10     51.    Plaintiff continued to work in the Sales Associate position from April 2022
11  through November 2022.

12     52.    On or around July 3, 2022, Plaintiff met with Director of Field Development
13  Amber Alexander to discuss his status within the company. During this conversation, Plaintiff
14  asked when he would be eligible to apply for advancement. Director Alexander responded that
15  it would take some time and it would depend on his performance going forward. When Plaintiff
16  mentioned that he never received a factual explanation for his demotion and that was never
17  disciplined for insubordination or unprofessional communications in his 20 plus years with
18  Mattress Firm, Director Alexander said she would talk to upper management and get back to
19  him. Plaintiff never received a response from Director Alexander.

20     53.    During this time, Plaintiff continued to be overlooked for advancement and,
21  instead, received less desirous hours and locations despite having a record of high sales
22  performance with the Company.

23     54.    Upon information and belief, Mattress Firm was attempting to encourage
24  Plaintiff to resign by first demoting him, overlooking him for advancement and, instead,
25  assigning increasingly undesirable sales hours and locations despite having a record of high
26  sales performance.

27     55.    As a result of the demotion, Plaintiff's income decreased by over one-half of his
28

pre-demotion earnings and continued to decrease throughout the year.

56. On or around November 1, 2022, after the denial of his appeal, and after months of attempting to be reinstated to Senior Store Manager, Plaintiff resigned/was constructively discharged from Mattress Firm as it had effectively ended his employment.

57. Upon information and belief, Mattress Firm demoted Plaintiff in retaliation for engaging in protected activity, *i.e.*, reporting discriminatory hiring and interviewing practices by District Manager Rader to Regional Vice President Joslyn.

58. Upon information and belief, Mattress Firm continued to retaliate against Plaintiff for engaging in protected activity, *i.e.*, filing the August 31, 2022, Charge of Discrimination against Mattress Firm wherein he alleged retaliation.

59. Mattress Firm's retaliation against Plaintiff continued when it denied his appeal, when it denied him advancement following the demotion, and/or when it assigned him increasingly undesirable sales positions throughout 2022.

60. When Plaintiff complained of the discrimination he witnessed by District Manager Steve Rader, Defendant ignored Plaintiff's complaints and instead retaliated against him by subjecting him to adverse employment actions including, but not limited to, demoting him from Senior Store Manager to Sales Associate, denying him advancement following the demotion, and when it assigned him increasingly undesirable sales positions throughout 2022 decreasing her earning capacity even further.

61. Defendant's actions after Plaintiff engaged in protected activity by (1) reporting District Manager Steve Rader's discriminatory hiring and interviewing practices, and (2) filing a Charge of Discrimination regarding the retaliation he received with the EEOC, significantly altered, and changed the terms and conditions of Plaintiff's employment such that they became intolerable.

62. Plaintiff's employment was terminated in retaliation due to his prior complaints of Defendant's discriminatory practices and harassment.

63. Defendant's proffered explanations for the discriminatory conduct are

unfounded and not factual.

64. As a result of the unlawful retaliation by Defendant, Plaintiff has been adversely affected including loss of career, income and related benefits, in addition to causing Plaintiff significant emotional distress and negatively impacting his health and well-being.

### FIRST CLAIM FOR RELIEF

### (Retaliation under Federal Law, Title VII, 42 U.S.C. § 2000e-3 and State Law, NRS 613.340)

65. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

66. In violation of 42 U.S.C § 2000e-3, Defendant retaliated against Plaintiff after he complained of acts which he reasonably believed were discriminatory, *i.e.*, District Manager Steve Rader's discriminatory hiring and interviewing practices.

67. In violation of NRS 613.340, Defendant retaliated against Plaintiff after he complained of acts, which he reasonably believed were discriminatory, *i.e.*, District Manager Steve Rader's discriminatory hiring and interviewing practices.

68. There may be more detrimental acts of which Plaintiff is unaware which may also constitute retaliation in that it harmed Plaintiff.

69. Plaintiff observed District Manager Steve Rader ask non-white applicants different, and more difficult, questions than white applicants.

70. Plaintiff observed District Manager Rader ask non-white applicants to engage in sales roleplays while he did not make the same request of white applicants.

71. Plaintiff witnessed District Manager Rader making racist or racially insensitive comments at work and/or in the presence of other Mattress Firm employees.

72. When Plaintiff protested Defendant's discriminatory conduct by reporting the conduct to Regional Vice President Joslyn, he was retaliated against by being demoted from Senior Store Manager to Sales Associate.

73. Defendant affirmed the demotion after Plaintiff appealed with Mattress Firm

Human Resources that the demotion was meritless and retaliatory.

74. Defendant further retaliated against Plaintiff after he engaged in protected activity by filing his August 31, 2022, Charge of Discrimination against Mattress Firm with the EEOC wherein he alleged retaliation.

75. After filing the Charge of Discrimination, Defendant denied him advancement following the demotion, and/or when it assigned him increasingly undesirable sales positions throughout 2022.

76. The behavior complained of also constitutes retaliatory harassment and the creation of an illegally hostile environment by Defendant.

77. The actions and conduct by Defendant constitute illegal retaliation which is prohibited by federal and state statutes.

78. Plaintiff suffered damages in an amount deemed sufficient by the jury.

79. Plaintiff is entitled to an award of reasonable attorney's fees.

80. Defendant is guilty of oppression, fraud or malice, express or implied because Defendant knowingly and intentionally retaliated against Plaintiff for protesting against and reporting their blatant discriminatory conduct.

81. Therefore, Plaintiff is entitled to recover punitive damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

## SECOND CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)

82. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

83. Defendant's conduct toward Plaintiff was extreme, outrageous, and caused significant emotional harm, headaches, sleeplessness, depression, stress-related ulcer, and various physical and mental distress.

84. Defendant's conduct was extreme, outrageous, and undertaken with either intent

or reckless disregard for causing Plaintiff emotional distress.

85. Defendant had a duty to refrain from engaging in the hostile and retaliatory acts as described above.

86. Defendant breached that duty.

87. Defendant's intentional or negligent conduct was the legal, actual, proximate cause of Plaintiff's extreme and/or severe emotional distress by engaging in the conduct described herein.

88. Defendant must pay damages in an amount to be determined at trial but for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life because they engaged in illegal actions.

89. Because Defendant is guilty of oppression, fraud or malice, express or implied, Defendant must pay Plaintiff an additional amount for the sake of example and by way of punishment.

90. Plaintiff has had to obtain the services of an attorney to protect his rights and secure compensation for the damages incurred as a result of these violations and therefore, she is entitled to recover reasonable attorney's fees and costs against Defendant.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays this court for:

a. A jury trial on all appropriate claims;

Moreover, to enter judgment in favor of the Plaintiff against the Defendant(s) as follows:

b. Awarding Plaintiff an amount sufficient to fully compensate him (including tax consequences) for all economic losses of any kind, and otherwise make him whole in accordance with Title VII, and Nevada state law;

a. General damages;

b. Special damages;

c. An award of compensatory and punitive damages to be determined at trial;

      d.  Pre- and post-judgment interest;

      e.  An award of attorney's fees and costs; and

      f.  Any other relief the court deems just and proper.

Dated: April 29, 2024.

                Respectfully submitted,

                **HKM EMPLOYMENT ATTORNEYS, LLP**

                */s/ Michael Arata*
                **MICHAEL ARATA, ESQ.**
                Nevada Bar No. 11902
                E-mail: marata@hkm.com
                **HKM EMPLOYMENT ATTORNEYS LLP**
                101 Convention Center Drive, Suite 600
                Las Vegas, Nevada 89109
                Tel: (702) 805-8340
                Fax: (702) 805-8340
                *Attorneys for Plaintiff*